Bigger., J.
The petition in this case set up a contract between plaintiff and the board of managers of the Ohio Penitentiary by which the board in consideration of the undertakings therein contained to be performed by the plaintiff undertook to furnish and keep employed in the Ohio Penitentiary for plaintiff seventy-five able-bodied prisoners and fifty infirm prisoners for a period of five years in the manufacture of steel stampings, forgings, tools, handles and other articles.
The plaintiff pleads' performance of the conditions of the contract upon its part, and alleges that it has installed machinery at great expense for the purpose of carrying out its contract, and taken orders and built up a valuable good will, but that the managers of the penitentiary are threatening without cause to reduce the number of prisoners working under the contract to plaintiff’s irreparable damage. *567 The second defense of the answer states that the order reducing the number of prisoners working under this contract is by virtue of the provisions of Sections 7432-1 and 7432-2 of the Revised Statutes of Ohio. These sections are somewhat lengthy and I will not undertake to state their provisions at length. In substance it is therein provided that' the total number of prisoners employed in the penitentiary, workhouses and reformatories of this state in the making'of any one kind of goods shall not exceed ten per cent, of all the persons employed outside of the penal institutions of the state in making the same kind of goods except in industries in which not more than fifty free laborers are employed.
The second section makes it the duty of the attorney-general and the commissioner of labor statistics to enforce the provisions of the law, and provides for the making of investigations by the commissioner of labor statistics when he shall deem it advisable to ascertain the facts, and that he shall make report to the managers or directors of each of the institutions found to be employing more than the number of persons allowed under the law, and makes it the duty cf such managers and directors thereupon to reduce the number to the limit permitted by law, any provision in any contract to the contrary notwithstading. To. this second defense of the answer the plaintiff has filed a general demurrer, and it is claimed that the demurrer should be sustained because the act is unconstitutional.
The first question which presents itself, and the one which has presented the greatest difficulty, is the question as to whether or not the court has jurisdiction. The question has not been argued by counsel at any length. It is suggested in the brief of counsel for the plaintiff that when the authorized officers of a state enter into a contract with the individual citizens, then the state as to such transaction relinquishes its sovereign character and descends to the plane of the individual with whom it contracts, and can claim no exemption from the rules of law applicable to the contracts of private parties in like circumstances. The attorney-general in his brief seems to concede that this view of the matter is correct. It is conceded, however, *568 that as the state can not be sued without its consent, it- may defeat the enforcement of the contract. “
The question as to what constitutes an action against the state has been most fully and exhaustively considered by the Supreme Court of the United States under the Eleventh Amendment to the Federal Constitution, which provides “that the judicial power of the United States'shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the LTnited States by citizens of another state, or by citizens and subjects of any foreign state.” While it was held in the early cases decided by the Supreme Court of the United States that the court would not look beyond the record, and that unless the state was nominally a party, the constitutional restriction had no application, it was later held that although the state was not nominally a party, if it was the real party the action was- as much one against the state as if it were nominally a party.
It was decided in the case of In re Ayers, 123 U. S., 443, that a suit against officers of a state to compel them to do acts which constituted a performance by the state of its contract is in effect a suit against the state itself, and that the converse of that proposition was equally true that a suit against the state would not lie to restrain the state officers by judicial process from doing acts required of .them by state laws which, when performed, would constitute a breach of the state’s contract. It was, hov^ever, announced that this ruling was not to be considered to impinge upon the doctrine that when state officers are proceeding to do that which will be a violation of the rights of the individual under a contract with the state under color of an unconstitutional law, that the action will lie to restrain such state officers where their proposed action will inflict irreparable injury.
Accordingly there is a line of cases decided by the United States Supreme Court in which this principle is announced and applied, and it seems to me this case falls within the principle announced by the Supreme Court of the United States -in the case of Pennoyer v. McConnaughy, 140 U. S., 7, and *569 cases there cited. It is said by Justice Lamar in that case that—
“It has been well settled that when a plain official duty requiring no exercise of discretion is to be performed (as in this case, to furnish the number of men called for by the contract), and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation can not be had at law, may have an injunction to prevent it. In such eases the writs of mandamus and injunction are somewhat correlative to each other. In either ease, if the officer plead the authority of an unconstitutional law for the non-performance or violation of his duty, it will not prevent the issuing of the writ. An unconstitutional law will be treated by the courts as null and void. ’ ’
Is the law under which it is said the officers aré justified in refusing to carry oui the terms of this contract a constitutional enactment? It seems clear to me that it is unconstitutional and void in that it is in -direct conflict with Section 2 of the Bill of Rights of this state which declares, “All political power is inherent in the people. Government is instituted for their equal protection and benefit.”
This provision 'of our Constitution was said by the Supreme Court in State, ex rel, v. Ferris, 53 O. S., 314, to be as broad as the provision contained in the first section of the Fourteenth Amendment to the Constitution of the United States which provides that, “no state shall deny to any person within its jurisdiction the equal protection of-the laws.” This statute excepts from its provision industries in which not more than fifty free laborers are employed. The object and purpose of this statute are plain. It was enacted to protect the free laborer of the state from competition in the market with' the products manufactured by convict labor. If it is beneficial to the free laborer of the state to be protected in this way from unlimited competition with convict labor, and clearly that was the view of the law makers, then no reason is apparent for denying the benefit and protection .of the law to those free *570 laborers of the Mate who may be engaged in some mechanical occupation which only employs fifty men, while the benefit and protection afforded by the law is extended to those who are engaged in a manufacturing industry which employs fifty-one men. All free laborers engaged in manufacturing pursuits are entitled to equal protection of the law without regard to the number who may be engaged in it. The Legislature under this constitutional guarantee is Without power to make laws which will benefit one class of laborers or laborers engaged in one occupation and leave those engaged in another to unlimited competition with convict labor. As well might the Legislature enact that the law should not apply to those who are engaged in manufacturing articles from iron or brass or wood, as to classify the laborers of the state upon the basis of the number who may be engaged in the manufacture of any particular article.
In the case of State, ex rel, v. Ferris, 53 O. S., 314, the validity of the law which imposed a tax upon direct inheritance was in question. It was provided in the act that the tax should only be imposed upon those estates which exceeded $20,000 in value, and exempted all estates of less value.
In the case of Coal Company v. Rosser, 53 O. S., 12, it was decided that the statute which provided that, “If the plaintiff in an action for wages recover the sum claimed by him in his bill of particulars, there shall be included in his costs such fee as the court may allow but not to exceed five dollars for his attorney.” This was held to infringe the same constitutional guarantee.
In the opinion it is said:
“Upon what principle can a rule of law rest which permits one party, or a class of people, to invoke the action of our tribunals of justice at will, while the other party, or another class of citizens, does so at the peril of being mulct in an attorney fee, if an honest, but unsuccessful defense should be imposed?”
The statute that imposes this restriction upon one citizen, or .class of citizens only, denies to him or them the equal pro•teetjon of the law. ' ...
*571 In the ease of Mykrantz v. The Globe Building & Loan Association, 19 C. C., 51, it was held that a law which exempted building and loan associations from the operation of the usury law violated this constitutional provision.
To the same effect was the decision of the Supreme Court in State v. Gardner, 58 O. S., 599, and Williams v. Donough, 65 O. S., 499.
Again this act in the second section provides that—
“When the commissioner of labor statistics has reason to believe that the limitations of the act are being exceeded in the 'employment of prison labor in any industry or industries he may, if he deem it advisable, investigate and ascertain the number of all persons in this state outside of the penitentiary, workhouses and reformatories employed in manufacturing the kind of goods in question, and the number of persons and inmates employed in each penitentiary, workhouse and reformatory in the manufacture of such product or products.”
The act then goes on to-provide that he shall make a report of such investigation, and that a copy of such report shall be furnished to the managers or directors of each institution found to be employing more than the number permitted by law, and it is made the duty of such managers and directors thereupon to reduce the number in accordance with the report. That is, it is left entirely to the commissioner of labor statistics as to whether he will or will not make such investigation and report. He may, although satisñed that the law is being violated as to two or more industries, investigate one and thus reduce the number who may be employed, and decline to investigate as to the others.
Here again the law fails to provide for the equal protection of the law to all free laborers of the state. If our constitutional provision is as broad as the provision of the Federal Constitution, which provides that no state shall deny to any person within its jurisdiction equal protection of the law, how can it be said to be a compliance with this requirement when the state enacts a law which leaves it entirely to the discretion of some individual as to whether or not this constitutional guarantee shall or shall not be observed?
17. P. Herrod, for plaintiff.
Wade H. Ellis, Attorney-General, and G. H. Siewart, for defendants.
Under the terms of this law; although the commissioner of labor statistics may be satisfied that in two or more industries the law is being violated he may, if he chooses, make a report as 'to one of them and enforce the law as to that industry, and make no investigation and no report as to the other, and leave those engaged in that occupation or those occupations to unrestricted competition with convict labor. ' This seems to me to be equally as subversive of this constitutional guarantee as the exception of industries in which not more than fifty free laborers are employed., It is the duty of the state to provide that its laws shall operate to protect all citizens equally and not that they may or may not so operate. This, in my opinion, is the delegation of the legislative function to the commissioner.
. For these reasons I am clearly satisfied that this law is in conflict with this constitutional requirement and therefore void, and that being unconstitutional and void it will not afford any justification to the managers and officers of the Ohio Penitentiary for refusing to carry out the terms of this contract. For this reason the demurrer is sustained.
As to the argument that this law became a part of the contract, being upon the statute books when the contract was entered into, the answer to that is that it is only valid laws that are read into contracts, and not invalid laws. Palmer & Crawford v. Tingle, 53 O. S., 423.